IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RUTH M.,

                Plaintiff,

    v.                                     Civil Action No.
                                          5:24-CV-164 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

<u>APPEARANCES</u>:                                  <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

THE LAW OFFICES OF                          STEVEN R. DOLSON, ESQ.
STEVEN R. DOSLON PLLC
6320 East Fly Road, Suite 201
East Syracuse, NY 13057

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.                     VERNON NORWOOD, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on December 18, 2024, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not

---

[1] This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18. Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

    3)    The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

    4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    January 14, 2025
            Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
RUTH M.

                        Plaintiff,

vs.                                       5:24-CV-164

Commissioner of Social Security,

                        Defendant.
------------------------------------------------------x
```

### *DECISION*

December 18, 2024

the HONORABLE DAVID E. PEEBLES,

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

```
For Plaintiff:    LAW OFFICES OF STEVEN R. DOLSON PLLC
                  6320 Fly Road
                  East Syracuse, New York 13057
                    BY:  STEVEN R. DOLSON, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  6401 Security Boulevard
                  Baltimore, MD 21235
                    BY:  VERNON NORWOOD, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT: Let me begin by thanking both of you
2  for excellent presentations. This presented an interesting
3  case in a matter that unfortunately has been languishing for
4  almost ten years before the Agency.
5    Before I address the merits of the case, I wanted
6  to broach the subject of consent. Attorney Dolson, when this
7  case was filed it was assigned to one of my colleague
8  Magistrate Judges Therese Wiley Dancks. The consent form
9  that was filed at docket 7 consents to Magistrate Judge
10 Dancks deciding the case with direct review to the Second
11 Circuit Court of Appeals. The matter obviously has since
12 been transferred to me. Does the plaintiff consent to my
13 deciding the case?
14   MR. DOLSON: Yes, Judge, the plaintiff fully
15 consents.
16   THE COURT: Thank you.
17   Plaintiff has commenced this proceeding pursuant to
18 42, United States Code, Sections 405(g) and 1383(c)(3) to
19 challenge an adverse determination by the Commissioner of
20 Social Security. The background as relevant to the issues
21 raised is as follows.
22   Plaintiff was born in December of 1981. She turns
23 43 years of age this month. She lives with her husband and
24 children and mother in Pennellville, New York. She has a
25 high school degree and an Associate's college degree. She is

1  right-handed.  She last worked in 2015 but has since been
2  paid for working approximately ten hours per week caring for
3  her mother.  She has described her duties in that regard as
4  basically babysitting, monitoring safety and so forth.
5           Physically, plaintiff suffers from a variety of
6  medically determinable impairments, including, as relevant
7  again to this case, bilateral arm, hand and finger issues,
8  including a history of cubital tunnel syndrome and carpal
9  tunnel syndrome.
10          In that regard she has undergone surgeries,
11 including on August 25, 2015, wherein she underwent a left
12 endoscopic carpal tunnel release; January 4, 2016, a left
13 open carpal tunnel release; July 13, 2016, open carpal tunnel
14 release and a decompression of proximal median nerve of
15 forearm; on November 14, 2019, a right ulnar nerve
16 decompression at elbow with anterior transposition, right
17 medial elbow flexor muscle lengthening, right index finger
18 trigger release, and left middle trigger finger cortisone
19 injection flexor tendon sheath; on March 15, 2021, the right
20 thumb, middle, ring and small fingers flexor tendons sheath
21 A1 pulley trigger release; on September 22, 2022, left thumb
22 trigger release, left middle finger trigger release, left
23 middle finger mucous cyst excision flexor tendon sheath, left
24 ulnar nerve revision decompression with anterior
25 transposition of ulnar nerve, left elbow medial flexor muscle

1  lengthening.
2           In addition, she has undergone testing, including
3  on February 17, 2017, EMG and nerve conduction studies.  That
4  appears at 688 through 692 of the Administrative Transcript.
5  The impression being abnormal study.  And I won't read the
6  entirety of the transcript, but the conclusion is moderate to
7  severe left carpal tunnel syndrome and moderate left ulnar
8  neuropathy at the elbow.
9           There was also nerve conduction study and EMG done
10 on May 10, 2018.  Assessment, left shoulder calcific
11 tendonitis; right lateral epicondylitis; chronic ulnar
12 neuropathy at the elbow, right worse than left; chronic
13 median neuropathy, left worse than right; C7 neuropathy.
14          There was testing done on June 3, 2022, EMG and
15 nerve conduction, abnormal study.  Electrodiagnostic studies
16 of the bilateral upper extremities reveal evidence of
17 bilateral demyelinating median mono-neuropathies at the
18 wrists, affecting both sensory and motor fibers.  These
19 findings are consistent with moderate bilateral carpal tunnel
20 syndrome.  Of note, there is reinnervation in the left
21 abductor pollicis brevis, which is secondary to chronic
22 median motor axonal loss due to previous severe left carpal
23 tunnel syndrome.  The conclusions are bilateral carpal tunnel
24 syndrome, likely moderate bilaterally; moderate bilateral
25 ulnar neuropathies at the elbows; chronic right C6

1   radiculopathy; left median sensory and motor nerve conduction
2   responses are slightly improved compared to previous
3   postsurgical EMG testing in 2017.  That's 3344 to 3345.
4          I note that plaintiff also suffers from variously
5   diagnosed mental conditions, including anxiety and
6   depression, which are not relevant to this case today.
7          Plaintiff is a past smoker.  She testified to
8   smoking two to three cigarettes per day, and she quit, the
9   evidence is a little equivocal, but approximately 2020.
10         This case, as was mentioned during oral argument,
11  has a tortured procedural history.  It dates back to Title II
12  and Title XVI applications filed on May 4, 2015, alleging an
13  onset date of September 1, 2005, which was later adjusted to
14  plaintiff's date of last insured status of March 31, 2015.  A
15  hearing was conducted by Administrative Law Judge Gretchen
16  Mary Greisler on June 22, 2017.  The ALJ ultimately issued an
17  unfavorable decision on August 2, 2017.  The Social Security
18  Administration Appeals Council denied review on July 27,
19  2018.  A suit was commenced in this court on August 22, 2018.
20  In the intervening time between the commencement of that suit
21  and its disposition, plaintiff filed a subsequent Title XVI
22  application on August 27, 2018, alleging an onset date of
23  August 3, 2017.
24         On February 18, 2020, Magistrate Judge Christian F.
25  Hummel issued a Report and Recommendation recommending that

1  the matter be remanded for further proceedings.  That was
2  adopted by District Judge Frederick J. Scullin on March 16,
3  2020.  A hearing was conducted on February 12, 2020 by
4  Administrative Law Judge Greisler, who issued again an
5  unfavorable decision on April 10, 2020.  The Appeals Council,
6  however, vacated that determination on June 25, 2020, and it
7  also vacated the August 2, 2017 decision, as well as the
8  April 10, 2020 decision, and ordered consolidation of the two
9  matters.  A hearing was conducted on August 25, 2020 by
10 Administrative Law Judge Elizabeth Koennecke, who then issued
11 an unfavorable decision on October 21, 2020.
12          The matter was again remanded by the Appeals
13 Council on September 28, 2022.  Among the findings the
14 Appeals Council made was that the hearing decision did not
15 comply with the remand order directing consolidation of the
16 claims.  The Appeals Council also criticized the
17 Administrative Law Judge's evaluation of opinion evidence
18 concerning plaintiff's mental condition and concerning
19 plaintiff's asthma.
20          On April 10, 2023, Administrative Law Judge
21 Koennecke held another hearing and subsequently issued an
22 unfavorable decision on April 14, 2023.  The Appeals Council
23 denied plaintiff's application for review on December 13,
24 2023, making it a final determination of the Agency.  This
25 suit was commenced on February 2, 2024, and is timely.

1            In her decision Administrative Law Judge Koennecke
2    applied the familiar five-step sequential test for
3    determining disability, first noting that plaintiff was
4    insured through March 31, 2015 for purposes of Title II
5    benefits.
6            She found at step one that plaintiff had not
7    engaged in substantial gainful activity, although she did
8    note plaintiff's part-time work caring for her mother.  She
9    said that although it did not constitute substantial gainful
10   activity, it would be considered when making her
11   determination.
12           At step two, the Administrative Law Judge concluded
13   that plaintiff suffers from many physical and mental
14   impairments that are severe and cause more than minimal
15   limitations on her ability to perform basic work activities,
16   and proceeded to step three where she concluded that
17   plaintiff's conditions do not meet or medically equal any of
18   the listed presumptively disabling conditions set forth in
19   the Commissioner's regulations.
20           The Administrative Law Judge then based on a review
21   of the record determined that plaintiff retains the residual
22   functional capacity, or RFC, to perform sedentary work with
23   additional limitations.  Pertinent to this case is the
24   limitation that plaintiff can frequently reach in all other
25   directions except overhead and frequently handle, finger and

feel.

Applying that and after reviewing the medical evidence of record, the ALJ concluded that plaintiff is not capable of performing her past relevant work, but found at step five, with the assistance of testimony from a vocational expert, that there is work available in the national economy that plaintiff was capable of performing, not withstanding her limitations, including as representative examples electronic component inspector, medical device assembler, and shipping checker, and therefore concluded that plaintiff was not disabled at the relevant times.

The Court's function in this case is admittedly deferential and limited.  I must determine whether correct, legal principles were applied and the resulting determination is supported by substantial evidence.  The Court, the Second Circuit Court of Appeals, has fleshed out and reminded us of that standard in *Brault versus Social Security Administration Commissioner*, 683 F.3d 443, Second Circuit 2012, and later again in *Schillo v. Kijakazi*, 31 F.4th 64, Second Circuit 2022.

Plaintiff's contentions in this case are limited to claiming that the residual functional capacity finding lacks support and it is not based on medical evidence, but instead the Administrative Law Judge's lay review of raw medical data.  Pivotal, of course, to any disability determination is

the assessment of a claimant's RFC which represents the range of tasks he or she is capable of performing notwithstanding his or her impairments. 20 C.F.R. Sections 404.1545(a) and 416.945(a). *Tankisi v. Commissioner of Social Security*, 521 F.App'x 29, Second Circuit 2013.

Ordinarily an RFC represents a claimant's maximum ability to perform sustained work activities in an ordinary setting on a regular and continuing basis, meaning eight hours a day for five days a week or an equivalent schedule. *Tankisi*, 521 F.App'x, at 33. And, of course, an RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomatology, and other limitations that could interfere with work activities on a regular and continuing basis, as well as all of the relevant medical and other evidence.

In this case, as I indicated, the RFC speaks to dexterity and requires that the plaintiff can frequently handle, finger and feel. There are four medical opinions in the record that speak to that issue. The first is from Dr. Kalyani Ganesh from June 4, 2015. It appears at 474 to 477 of the Administrative Transcript. In that medical opinion she makes the following finding: "There is no gross physical limitations to sitting, standing, walking, or the use of upper extremities. There is mild limitation with overhead activity."

1           The Administrative Law Judge in her decision
2   appears to give some weight to that opinion.  She allocates
3   partial evidentiary weight to it finding it is generally
4   consistent with the evidence in the record, including
5   evidence from the subsequent application in Dr. Ganesh's
6   evaluations of both June 2015 and December 2018.  Her
7   analysis is at 1114 to 1115 of the Administrative Transcript.
8           The second is a subsequent consultative examination
9   before Dr. Ganesh dated December 27, 2018.  In that it
10  appears as follows, at 2971, the opinion is at 2968, by the
11  way, to 2971, "fine motor activity of hands:  Hand and finger
12  dexterity, unable to comment.  Her effort and cooperation
13  varied for her.  The observation showed no atrophy of her
14  hand muscles.  No deformities.  Grip, unable to comment."
15  The medical source statement is as follows:  "Effort and
16  cooperation poor.  Unable to form medical source statement."
17          The third is a prior medical, administrative
18  medical finding from Dr. R. Uppal from January 17, 2019.  It
19  appears at 1404 to 1418 of the Administrative Transcript.
20  And there is a subsequent prior administrative medical
21  finding from Dr. R. Abueg from May 16, 2019, at 1420 to 1437.
22  Those prior administrative findings conclude that plaintiff
23  does not suffer from any manipulative limitations.  That
24  appears at 1412 to 1430.  Administrative Law Judge Koennecke
25  gave those prior administrative medical findings partial

weight, but concluded that plaintiff was more limited than what was observed in those opinions. That's at 1117.

When I look at the record as a whole, I find that it was error to place any weight on the opinion of Dr. Ganesh from June 4, 2015. This Court has previously declared through Judge Hummel and affirmed by Judge Scullin that that opinion is stale as reflected in subsequent testing. The opinion of Magistrate Judge Hummel appears at 1238 to 1243 of the record. Magistrate Judge Hummel noted that plaintiff's condition did not improve after Dr. Ganesh's evaluation.

The December 2018 opinion from Dr. Ganesh is not particularly informative, so the reliance, heavy reliance really is placed on the prior administrative findings. It is true that prior administrative agency findings can supply substantial evidence if they are supported. *Woytowicz v. Commissioner of Social Security*, 2016 WL 6427787, from Northern District of New York, October 5, 2016. The Report and Recommendation was adopted at 2016 WL 6426385, October 28, 2016.

However, in this case I find that they suffer from the same infirmity that Dr. Ganesh's 2015 opinion did. It is unclear what medical evidence was relied on, but what is clear is those opinions predate the surgeries of November 14, 2019, March 15, 2021, and September 22, 2022, as well as the EMG and nerve conduction study of June 8, 2022, which was

1   according to the report abnormal.

2           I find it interesting but insufficient that the
3   Administrative Law Judge appears to have not adopted greater
4   manipulative limitations because of the fact that at one time
5   plaintiff smoked, although she did reference also some
6   improvement and she did go through medical records in her
7   defense, 1115 to 1116, 1122 to 1124.

8           I have reviewed plaintiff's medical records from
9   the relevant period.  They're mixed, admittedly.  But as
10  Judge Hummel noted, this is not the type of case like *House*
11  *v. Astrue*, 2013 WL 422058 from the Northern District of New
12  York, February 1, 2013, where an administrative law judge can
13  based on his or her lay opinion and a review of medical
14  records make a common sense judgment without the benefit of
15  the medical opinion.  And I agree with Judge Hummel on that
16  issue.

17          Simply stated, there is no valid, non-stale medical
18  opinion supporting the residual functional capacity when it
19  comes to manipulative functions.  The RFC is, therefore, not
20  supported by substantial evidence I find.  *Perkins v.*
21  *Berryhill*, 2014 WL 3372964 from the Western District of
22  New York, 2018; and *Lilley v. Berryhill*, 307 F.Supp.3d 157,
23  from the Western District of New York, April 19, 2018.

24          So I don't find that this is a case like the case
25  cited by the Commissioner, *Cook v. Commissioner of Social*

1   *Security*, 818 F.App'x 108, from the Second Circuit, August
2   28, 2020.  This is a case where there should have been a
3   medical source statement that was not entirely stale and
4   could address the manipulative functioning of plaintiff's
5   hands.
6           So I am going to grant plaintiff's motion for
7   judgment on the pleadings and remand the matter.  I am
8   disappointed that this case has been pending for nearly ten
9   years and May of next year it will be the tenth anniversary
10  of plaintiff's first applications, but I don't think that
11  it's appropriate for me to make a finding that there is clear
12  and convincing, persuasive I should say, evidence of
13  disability, so I will remand as plaintiff has requested for
14  further proceedings.  I'm hopeful that in some way, shape or
15  fashion the Agency will see fit to find a current evaluation
16  in whatever format, from either a treating source, a
17  consultative examiner or otherwise, of plaintiff's
18  manipulative functioning following all her surgeries.
19          So with that, I will order remand of the case for
20  further proceedings, and wish you all happy holidays and
21  Happy New Year.
22                  *           *           *
23
24
25

1
2                          C E R T I F I C A T I O N
3
4            I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
5    Realtime Court Reporter, in and for the United States
6    District Court for the Northern District of New York,
7    do hereby certify that pursuant to Section 753, Title 28,
8    United States Code, that the foregoing is a true and correct
9    transcript of the stenographically reported proceedings held
10   in the above-entitled matter and that the transcript page
11   format is in conformance with the regulations of the
12   Judicial Conference of the United States.
13
14
15
16                           _____
                                    *Eileen McDonough*
17                           EILEEN MCDONOUGH, RPR, CRR
                             Federal Official Court Reporter
18
19
20
21
22
23
24
25